**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

ERIC C. MARTINSON,

Plaintiff,

-v-

FRED MENIFEE, et al.,

Defendants.

------------------------------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUL 1 8 2007
```

No.  02 Civ. 9977  (LTS)(HBP)

## OPINION AND ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION

In this civil rights action, former federal prisoner Eric C. Martinson ("Martinson"

or "Plaintiff") alleges that the United States Bureau of Prison ("BOP") and certain of its

personnel (collectively, "Defendants") violated his Constitutional rights and engaged in

retaliatory behavior to discourage him from exercising his rights while he was incarcerated at the

Otisville Correctional Facility ("Otisville"). On May 3, 2005, Magistrate Judge Henry B. Pitman

issued a Report and Recommendation ("Report") recommending that Defendants' motion for

summary judgment on Plaintiff's claims be granted in part and denied in part, and that Plaintiff's

cross-motion for summary judgment be denied.[1]  Specifically, Judge Pitman recommended that

---

[1]     In his Report, Judge Pitman characterized Plaintiff's opposition to Defendants' motion
as a cross-motion. It appears from Plaintiff's papers that they might be more properly
characterized as simply opposition papers, as he asks for a motion "granting there are
disputed issues of material fact and the action needs to proceed to a trial by jury" (Pls'
Notice of Mot.), rather than a determination that there are no genuine material facts
and that he is entitled to summary judgment relief.  However, neither party objected to
Judge Pitman's characterization of Plaintiff's papers as a cross-motion, and Plaintiff
objects to Judge Pitman's denial of summary judgment regarding his equal protection
claims. (Plaintiff's Objections to Magistrate's Report ("Pl's Obj.") 4.) Because the
Court does not disagree with Judge Pitman's conclusion that if this was, indeed, a

all of Plaintiff's claims against the individual Defendants in their official capacities be dismissed;

that all of Plaintiff's claims against the BOP and the United States be dismissed for lack of

subject matter jurisdiction; that summary judgment be granted dismissing Plaintiff's deliberate

indifference claims, Plaintiff's Privacy Act claims, Plaintiff's due process claims and Plaintiff's

claim alleging that administrative grievances at Otisville were inaccurately indexed; that

summary judgment be denied with respect to Plaintiff's equal protection claims; and that

Plaintiff's retaliation claims be dismissed for failure to state a claim upon which relief can be

granted except to the extent that Plaintiff alleges that he was reassigned to the morning work shift

in retaliation for his administrative grievances.  Both Plaintiff and Defendants submitted

objections to this Report.

When reviewing a Report and Recommendation, the Court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

U.S.C.A. § 636(b)(1)(C) (West 2005).  The court must make a de novo determination to the

extent that a party makes specific objections to a magistrate's findings.  United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).  To the extent, however, that a party makes only

conclusory or general objections, or simply reiterates original arguments, the Court will review

the Report strictly for clear error.  See Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003

WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees

Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992); Vargas v. Keane, No. 93 Civ. 7852

(MBM), 1994 WL 693885 at *1 (S.D.N.Y. Dec. 12, 1994).  Pro se parties are generally accorded

---

cross-motion, it should be denied for the reasons stated herein, it is irrelevant whether
Plaintiff's pleading was merely opposition papers or a cross-motion for summary
judgment as well, and the Court will characterize it as a cross-motion as did Judge
Pitman.

leniency when making objections. Walker v. Vaughn, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)

(quoting Vasquez v. Reynolds, No. 00 Civ. 0862, 2002 WL 417183 at *5 (S.D.N.Y. Mar. 18,

2002)). Nonetheless, even a pro se party's objections to a Report and Recommendation must be

specific and clearly aimed at particular findings in the magistrate's proposal, such that no party

be allowed a "second bite at the apple" by simply relitigating a prior argument. Camardo, 806 F.

Supp. at 381-82.

        The Court has conducted a thorough review of the record herein, including,

among other things, the parties' summary judgment submissions, the Report, the parties'

objections, and relevant legal authority. For the reasons that follow, the Court adopts in part and

declines to adopt in part Judge Pitman's Report. Specifically, the Court declines to adopt Judge

Pitman's determination that the Plaintiff's unexhausted claims under the PLRA are still viable.

The Court also declines to adopt Judge Pitman's resolution of Plaintiff's retaliation claims

(specifically, those which survive the PLRA analysis). The Court does, however, adopt Judge

Pitman's recommendations that all of Plaintiff's claims against the individual Defendants in their

official capacities be dismissed; that all of Plaintiff's claims against the BOP and the United

States be dismissed for lack of subject matter jurisdiction; that summary judgment be granted

dismissing Plaintiff's deliberate indifference claims, Plaintiff's Privacy Act claims, Plaintiff's due

process claims, Plaintiff's claims alleging that administrative grievances at Otisville were

inaccurately indexed; and that summary judgment be denied on Plaintiff's equal protection

claims (specifically, that claim which survives the PLRA analysis.)

        In addition, this Court adopts Judge Pitman's March 21, 2005, Report and

Recommendation (docket entry 48) recommending that Plaintiff's motion for a temporary

restraining order (docket entry 18) be denied as moot. The Court also denies Plaintiff's motion

for a contempt order (docket entry 21). Finally, the Court grants nunc pro tunc Plaintiff's motion

for an enlagement of time to respond to Defendants' motion for summary judgment and denies as

moot Plaintiff's motion to compel discovery (both docketed as entry 25).

## BACKGROUND

The factual background of this case is laid out in detail in Judge Pitman's Report.

Familiarity with it is presumed.

## ANALYSIS

### I.   PSLRA Exhaustion

As a threshhold matter, it should be noted that Judge Pitman considered the merits

of all of Plaintiff's claims despite finding that Plaintiff failed to administratively exhaust three of

his claims (that he received ineffective physical therapy, that the alleged placement of a putative

child molester in his cell was improper and that he was treated unequally during his prison

employment.) Judge Pitman did so because he found the law regarding whether the

administrative exhaustion requirements of the Prison Litigation Reform Act ("PLRA") must be

complied with if the prisoner is released from incarceration during the pendency of his action to

be unsettled. (Report 34.)   Despite the fact that neither Plaintiff nor Defendants specifically

objected to the Judge Pitman's recommendations regarding exhaustion under the PLRA, this

issue is a threshold inquiry that this Court must consider.  See 42 U.S.C. § 1997e(a), which

provides that "[n]o action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." The
Court concludes that it was clear error for Judge Pitman to not dismiss those claims which he
determined Plaintiff had failed to exhaust.

When a plaintiff is released from prison during the pendency of an action, as is the
case in the present matter, certain administrative remedies are obviously no longer available to
the plaintiff. See Morris v. Eversley, 205 F. Supp. 2d 234, 241 n.4 (S.D.N.Y. 2002) (citing Liner
v. Goord, 115 F. Supp. 2d 432, 434 (S.D.N.Y. 2000) (concluding that administrative remedies
were no longer available to plaintiff who had been released from prison because Inmate
Grievance Program (IGP) procedures, on their faces, are available only to inmates and visitors,
and not to former prisoners). Thus, some courts have concluded that where a plaintiff is released
from prison during the pendency of his or her action, he or she is no longer required to satisfy the
exhaustion requirements of the PLRA. See, e.g., Stevens v. Goord, No. 99 Civ. 11669 (LMM),
2003 WL 21396665, at \*4 (S.D.N.Y. June 16, 2003) ("[B]ecause the plaintiff is no longer
incarcerated, he no longer has access to the Inmate Grievance Program ('IGP'), and therefore no
administrative remedies are available for him to exhaust.").

However, the Second Circuit has held that even where a plaintiff is released from
prison during the pendency of an action, if the plaintiff had "ample opportunity" to exhaust
administrative remedies before his or her release from prison, his or her unexhausted claims may
be dismissed because of that failure to exhaust, and may be dismissed with prejudice. See Berry
v. Kerik, 366 F.3d 85, 88 (2d Cir. 2003) (former inmate who had been in the custody of the
NYCDOC had ample opportunity to use administrative remedies where he had been incarcerated
for several months after the onset of the conditions that gave rise to his complaints and before his
release, and then had been subsequently reincarcerated for periods of nine months and three

months on unrelated offenses); see also Finger v. McGinnis, No. 99 Civ. 9870 (LTS) (THK),
2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004) (finding that plaintiff had ample opportunity
to exhaust administrative remedies when almost nine months had passed between the time of the
incident and the date plaintiff initiated his action), and see also Rodriguez v. Westchester County
Jail Correctional Dept., 372 F.3d 485 (2d Cir. 2004) (finding that justification for not exhausting
remedies existed when a prisoner believed that exhaustion was not required, a belief deemed
reasonable because it was thereafter entertained by a Second Circuit panel (although ultimately
rejected by the Supreme Court)).

    In his Report, Judge Pitman noted the logic used by Judge McKenna in Stevens,
2003 WL 21396665, where the court noted that if it were to dismiss a former inmate's claims for
failure to exhaust, the plaintiff, who was no longer a prisoner, could simply refile his Section
1983 claim without being subject to the PLRA's exhaustion requirement. Because he believed
the law to be unclear and because he found Judge McKenna's logic to be compelling (and in the
absence of briefing from the parties on this issue), Judge Pitman concluded that none of
Plaintiff's claims should be dismissed for failure to exhaust administrative remedies under the
PLRA. Although the Court agrees with the practical ramifications of Judges McKenna and
Pitman's logic (though it does not appear that the situation where claims would be dismissed
with prejudice was taken into consideration), it disagrees with the contention that the law
surrounding this issue in this Circuit is unsettled. This Court is bound by the controlling case
law of this Circuit, as explained in the Berry case, and can not substitute its own judgment for
that law. As the Second Circuit held in Berry, the claims of a prisoner who was released from
prison during the pendency of his or her action should be dismissed with prejudice where
administrative remedies were available for a reasonable length of time and were not exhausted

"in the absence of any justification." Berry, 366 F.3d at 88. Therefore, the Court has an affirmative duty to examine whether or not Plaintiff had ample time to exhaust the three claims that Judge Pitman correctly concluded were unexhausted.

Plaintiff was released from prison on March 19, 2004. With respect to his claim that he was provided ineffective physical therapy (see Plaintiff's Second Amended Complaint ("SAC") ¶¶ 57-58), Plaintiff began receiving the physical therapy of which he now complains in December 2002. (Id.) (See also the Declaration of Diane Sommer at 6 and Ex. E, where the prison official who treated Plaintiff cites Dec. 17, 2002, as the earliest date on which Plaintiff was provided physical therapy.) Thus, Plaintiff had approximately 15 months to exhaust the administrative remedies available to him while in prison, which the Court concludes is "ample time" under the reasoning of Berry and the circumstances of this case. There is no indication that there was justification for this delay on Plaintiff's part. Under Berry, Plaintiff is therefore precluded from claiming in federal district court that he was denied effective physical therapy while in prison, and this claim is dismissed with prejudice.

Similarly, Plaintiff did not file an administrative remedy request regarding his claim that prison officials replaced his cellmate with an alleged pedophile, which Plaintiff constituted a retaliatory action and an equal protection violation. The new cellmate was placed in Plaintiff's cell sometime between August 8 and August 12, 2002. (SAC ¶¶ 32-34.) Thus, Plaintiff had approximately 19 months between the time of the incident and the time he was released from prison to exhaust all available administrative remedies. Under these circumstances and in the absence of justification for not pursuing the available remedies, Plaintiff is precluded from claiming in federal district court that prison officials retaliated against him and violated his right to equal protection by assigning him an alleged pedophile as a cellmate, and these claims

are dismissed with prejudice.

Finally, Plaintiff did not file an administrative remedy request while in prison regarding his claim that he was denied equal protection when prison officials required him to work long hours under onerous conditions but where other inmate workers were not subject to similar treatment. Plaintiff was assigned to a morning workshift on August 7, 2002, and complains of unequal treatment beginning on that date. (SAC ¶¶ 27-28.) Thus, from the time of the incident until when Plaintiff was released from prison, he had approximately 19 months to exhaust all available administrative remedies. Again, the Court concludes this was "ample time" under the reasoning of Berry and the circumstances of this case. Therefore, Plaintiff is precluded from claiming in federal district court equal protection violations based on his time spent on the morning workshift, and this claim is dismissed with prejudice.[2]

II.    Plaintiff's Objections

Plaintiff objects to: (1) Judge Pitman's recommended dismissal of Plaintiff's retaliation claims for failure to state a claim (other than his job change claim, which survived); (2) Judge Pitman's recommended denial of Plaintiff's motion for summary judgment concerning

---

[2]    Judge Pitman determined that, when Plaintiff filed his initial pleading on August 16, 2002, and his first amended complaint on March 24, 2003, Plaintiff had additional unexhausted claims. Other than the three claims discussed above, all of Plaintiff's claims were exhausted at the time the SAC was filed on March 10, 2004, and are properly before this Court. Judge Pitman recognized that where an inmate asserts unexhausted claims in an initial pleading, subsequently exhausts the administrative grievance process and then continues to assert the claim in an amended pleading, no purpose would be served by dismissal of such a claim. (Report 26.) ("Even though the initial pleading may have been technically defective, where the defect is cured prior to the filing of the pleading currently before the court, dismissing the claim with leave to file yet another amended pleading would needlessly multiply the work of the court and the parties with no countervailing benefit.") The Court agrees with Judge Pitman's assessment, and thus there are no other unexhausted claims.

his equal protection claim; (3) Judge Pitman's recommended grant of summary judgment in favor of Defendants dismissing Plaintiff's due process claim; (4) Judge Pitman's recommended grant of summary judgment in favor of Defendants dismissing Plaintiff's deliberate indifference claims; (5) Judge Pitman's recommended dismissal of claims against Menifee and Chalmers in their individual capacities; (6) Judge Pitman's recommended grant of summary judgment in favor of Defendants dismissing Plaintiff's Privacy Act Claims; and (7) Judge Pitman's recommended grant of summary judgment in favor of Defendants dismissing Plaintiff's FTCA claims.

Plaintiff's objections, even read liberally in light of his pro se status, are, for the most part, conclusory, general and a reiteration of arguments made in his Second Amended Complaint ("SAC"), and in his papers in support of his cross-motion and in opposition to Defendants' motion for summary judgment. Accordingly, the majority of Plaintiff's objections do not merit de novo review. For example, regarding his FTCA claims, Plaintiff merely says he is objecting "for all of the reasons contained" in his cross-motion for summary judgment. (Pl's Obj. 13.) Regarding his Privacy Act claims, Plaintiff ignores entirely Judge Pitman's determination that the BOP has promulgated a regulation expressly exempting the Inmate Physical and Mental Health Record System from the requirements of the Privacy Act, and repeats his earlier arguments regarding that Act. Because most of Plaintiff's objections reiterate earlier arguments he made, or are not clearly aimed at particular findings in the magistrate's proposal, the Court reviews those portions of the Report for clear error and finds none.

The Court does, however, believe that Plaintiff makes one set of objections that are specific and clearly aimed at particular findings in the magistrate's proposal, and thus these objections merit de novo review. Plaintiff objects to Judge Pitman's dismissal of his First

Amendment retaliation claims (other than his retaliatory reassignment claim, which Judge Pitman determined survived the motion to dismiss[3]). Construing Plaintiff's arguments in his objections liberally, he states that Judge Pitman erred in concluding that his allegations were conclusory because they do not establish temporal proximity between the allegedly protected activity and the allegedly retaliatory acts (see Report 62). (See Pl's Obj. 3.) Plaintiff cites to various provisions of his SAC and his summary judgment papers that refer to time periods regarding the allegedly retaliatory activity, including an assertion that his cellmate was transferred the same week as "the retaliatory job change" (SAC ¶28), and that he was denied an opportunity he alleges he previously had been given to select a new cell mate "within 48 hours of the retaliatory job change." (SAC ¶ 32). Although the Court is not entirely convinced that Judge Pitman's determination that Plaintiff's other retaliation claims were conclusory was based solely on his observation that "Plaintiff [did] not even attempt to establish any temporal proximity between the allegedly protected activity and the allegedly retaliatory acts" (Report 62), because it appears that Plaintiff did indeed attempt to establish a temporal proximity between the time of his allegedly protected activity and the time of the retaliatory acts he alleges, did allege that the retaliation was an ongoing "pattern" in both his SAC and in his Objections, and does maintain that he continued to file administrative grievances throughout the time period where he claims to have been retaliated against, the Court will review Judge Pitman's determination regarding Plaintiff's retaliation claims de novo.[4]

---

[3]     As is discussed below, Judge Pitman converted Defendants' Motion for Summary Judgment into a Motion to Dismiss regarding Plaintiff's retaliation claims, noting that Plaintiff had not yet had discovery on those claims. (Report 59.)

[4]     Defendants argue in their response to Plaintiff's objections that Plaintiff has not alleged a temporal proximity between his assignment of a new cell mate and an allegedly protected activity, such as his administrative complaints, but rather has alleged a temporal proximity between his assignment of a new cell mate and another

As a threshhold matter, the Court must determine whether Judge Pitman's decision to convert the Defendants' motion for summary judgment into a motion to dismiss for purposes of the Plaintiff's retaliation claims was a proper one. Judge Pitman reasoned that the conversion was appropriate because Plaintiff had not had the opportunity for discovery on his retaliation claims.[5] (See Report 59.) Although it is common practice for a motion to dismiss pursuant to Rule 12(b)(6) to be converted in certain situations into a summary judgment motion,[6] Judge Pitman did not cite and the Court has not found any statutory or common law authority for converting a motion for summary judgment into a motion to dismiss.

Where the party opposing summary judgment contends that additional discovery is required, a court may deny summary judgment or order a continuance to permit the party to obtain the discovery. See Fed. R. Civ. P. 56(f). A party seeking additional discovery must present his or her contention that the additional discovery is needed by affidavit, and "[t]his Circuit has established a four-part test for the sufficiency" of such an affidavit. Paddington

---

retaliatory action- his allegedly retaliatory job change. However, in light of the leniency which is to be accorded a pro se party's complaint, and the finding by Judge Pitman that Plaintiff did sufficiently allege a temporal proximity between an allegedly protected activity and his assignment of a new cell mate, Defendant's argument, though technically accurate, is unpersuasive.

[5]     As Judge Pitman noted, Plaintiff in his cross-motion and in several previous motions argued that he was at a disadvantage in responding to Defendants' summary judgment motion. Judge Pitman analyzed this argument in his Report, and concluded that it was only with respect to Plaintiff's retaliation claims that he was at a disadvantage, and subsequently converted the summary judgment motions on those claims into a motion to dismiss. For substantially the reasons laid out by Judge Pitman on pages 13 and 14 of the Report, Defendants' summary judgment motion is not premature as to Plaintiff's other claims.

[6]     Under Rules Federal Rules of Civil Procedure 12(b)(6) and 12(c), where a motion for judgment on the pleadings or to dismiss for failure to state a claim requires a court to consider matters outside of the pleadings, the motion must be treated as a summary judgment motion, and "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Partners v. Bouchard, 34 F.3d 1132, 1137, 1138 (2d Cir. 1994).

The Rule 56(f) affidavit must include: (1) the nature of the uncompleted discovery; (2) how the facts sought reasonably are expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. See id. at 1138. The failure to file such a Rule 56(f) affidavit is sufficient grounds to reject a claim that the opportunity for discovery was inadequate. See id. at 1137. "Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative." Id. at 1138 (internal quotation marks and citations omitted.)

Plaintiff did not submit a formal Rule 56(f) affidavit. He did, however, title his opposition to Defendants' motion "Plaintiff's Memorandum of Law in Support of His Motion Pursuant to Rule 56(f)," referred to a then-pending motion he had made ordering the Defendants to answer his discovery requests or restrict their motion for summary judgment to non-factual issues (docket entry 25), and noted that "defendants have cleverly transformed their MSJ into a MSJ as if discovery had been conducted. Regardless, plaintiff will challenge as best he can without discovery, the veracity of the defendants' declarations... ." (Plaintiff's Memorandum of Law in Support of His Motion Pursuant to Rule 56(f) ("Pl. Mem.") 3) (emphasis in original).

In addition to being unable to find statutory or common law authority for Judge Pitman's decision to convert Defendants' motion for summary judgment into a motion for dismiss, the Court believes that this conversion was unnecessary. Plaintiff's exhausted retaliation claims are: his claim that his reassignment from an evening work shift to a morning work shift was retaliatory, his claim that his placement in SHU was retaliatory, his claim that the seizure of his eyeglasses was retaliatory, and his claim that disciplinary proceedings were

commenced against him in a retaliatory fashion.[7] Had the motion not been converted into a

motion to dismiss, Defendants would only have been entitled to summary judgment on those

claims if they could show that no genuine issue of material fact existed, even viewing all of the

evidence in the light most favorable to the Plaintiff.

As Judge Pitman noted in his Report, a prisoner's retaliation claim has three

elements: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action

against the plaintiff; and (3) there was a causal connection between the protected speech and the

adverse action. See Gill v. Pidlypchack, 389 F.3d 379, 380 (2d Cir. 2004). As Judge Pitman

also noted, the Second Circuit has taken notice that "claims by prisoners that particular

administrative decisions have been made for retaliatory purposes are prone to abuse." Flaherty v.

Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that the speech or conduct for which he was retaliated against

was his filing of administrative remedy requests. This conduct is protected. See Gill, 389 F.3d

at 384 (noting that the use of the prison grievance system is a protected activity). He has attached

to his opposition to Defendants' motion copies of these grievances that establish that he was

making these administrative remedy requests with some frequency throughout the time he claims

to have been retaliated against. (See, e.g., Exhibit 36, an Administrative Remedy Request dated

2/1/02; Exhibit 46, an Administrative Remedy Request dated 8/27/02; Exhibit 41, an

Administrative Remedy Request dated 8/31/02; Exhibit 34, an Administrative Remedy Request

---

[7]     Judge Pitman in his Report characterized Plaintiff's SAC as making five claims
        alleging retaliation, one of which is unexhausted. (Report 5-8.) The SAC does not
        delineate its claims. Although the parties appear to have discussed other potential
        claims of retaliation in their summary judgment briefing, because neither party
        objected to Judge Pitman's characterizations regarding Plaintiff's retaliation claims in
        their objections, and because the Court does not find that the characterization was
        clear error, the Court will proceeding in its analysis using Judge Pitman's
        characterization of Plaintiff's retaliation claims.

dated 9/1/02; Exhibit 32, an Administrative Remedy Request dated 10/3/02; Exhibit 34, an

Administrative Remedy Request dated 10/20/02; Exhibit 31, an Administrative Remedy Request

dated 12/6/02; Exhibit 37, an Administrative Remedy Request dated 2/2/03; Exhibit 38, an

Administrative Remedy Request dated 2/13/03; Exhibit 19, an Inmate Request to Staff dated

3/17/03; Exhibit 25, an objection to the issuance of an incident report dated 8/11/03; Exhibit 26,

an Administrative Remedy Request dated 3/7/04). It is clear that Plaintiff meets the first prong

of the retaliation analysis.

Regarding the second prong, that the Defendants took adverse action against the

Plaintiff, Defendants argued before Judge Pitman in their summary judgment papers that none of

Plaintiff's claims of retaliation rise to the level of a constitutional violation. (Defs' Mem. 37.)

The Second Circuit has made clear that in the prison context, adverse action is retaliatory

conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . .

constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). "In making this

determination, the court's inquiry must be tailored to the different circumstances in which

retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than

average citizens, before a [retaliatory] action taken against them is considered adverse." Id.

(internal quotation marks and citation omitted.)

There are genuine issues of material fact as to whether Plaintiff's remaining

exhausted claims (that his reassignment from an evening work shift to a morning work shift was

retaliatory, that his placement in SHU was retaliatory, that the seizure of his eyeglasses was

retaliatory, and that disciplinary proceedings were commenced against him in a retaliatory

fashion) could be termed adverse actions by a reasonable fact finder. For example, regarding his

assignment to the evening work shift, Plaintiff alleges that this change prevented him from taking

certain medications and forced him to remain standing in the direct sun for long hours. (SAC ¶¶ 19-20.) Defendants argue in their summary judgment papers that a job shift change is not an adverse action from the perspective of a prisoner, as "the job shifts are routinely changed for various administrative reasons." This argument is insufficient to establish that no reasonable fact finder could find that a job shift of the nature Plaintiff described is an adverse action, especially in light of Plaintiff's allegations that he was told he was given a new time shift so that he would not have as much time to file administrative complaints. Regarding the seizure of his eyeglasses, as will be discussed below, there are questions of fact as to whether or not those eyeglasses were necessary for the Plaintiff's safety. Defendants have not met their burden of showing that no genuine issue of material fact exists as to whether or not the actions taken were adverse.

Finally, Defendants have also failed in establishing that no genuine issues of fact exist with regard to whether there is a causal connection between the activity alleged to be retaliatory and the protected speech. Despite Defendants' argument that he "does not even allege a temporal connection with any grievance he made," (Def. Mem. 35), as noted above, Plaintiff has proffered evidence that he was making administrative remedy requests throughout the time he alleges he was being retaliated against. Further, the Second Circuit has held that the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation, not that it is the only way of establishing a causal connection. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). In any event, Plaintiff has provided evidence in his opposition to Defendants' summary judgment motion of a temporal connection between certain of his retaliation claims and his administrative remedy requests. He alleges that he was assigned a new job shift the week of August 7, 2002. (SAC ¶ 19.) His administrative remedy request #262929-A1 (denial of medication) was responded to

approximately two weeks earlier, on July 23, 2002. (See Ex. G to Declaration of Lenoir Knoblauch). He alleges that he was placed in SHU, and his eyeglasses were taken from him, on or about 1/28/03. (SAC ¶ 75.) His administrative remedy requests #277070 (change of work shift) and #277071 (failure to provide hearing aid) were responded to approximately 5 weeks earlier, on December 17 and 18, 2002, respectively. (See Exs. O and P to Declaration of Lenoir Knoblauch). In addition, Plaintiff had the month prior filed an additional administrative remedy request. (See Pl. Exhibit 31, an Administrative Remedy Request dated 12/6/02.) Finally, Plaintiff alleges that disciplinary proceedings were initiated against him on 3/12/03 when he was issued an incident report after a disciplinary hearing that had alleged procedural defects. (SAC ¶¶ 83-84). Plaintiff had in the preceding month submitted two new administrative remedy requests. (See Exhibit 37, an Administrative Remedy Request dated 2/2/03; and Exhibit 38, an Administrative Remedy Request dated 2/13/03.)

Further, Plaintiff has alleged that he was told that his job transfer was made as a direct result of his use of the prison grievance process. See Colon, 58 F.3d at 873, noting that "direct evidence of retaliation," even when disputed, is a powerful reason to deny summary judgment, even if other evidence is largely circumstantial. Plaintiff has established that there are genuine issues of material fact as to whether or not he was retaliated against in violation of the First Amendment. Accordingly, the Court declines to adopt Judge Pitman's resolution of Defendants' motions as to Plaintiff's retaliation claims, and denies summary judgment as to them.

## Defendants' Objections

Defendants make two objections to the Report. First, Defendants object to Judge

Pitman's recommendation that summary judgment be denied with respect to Plaintiff's claim that he was reassigned to the morning work shift in retaliation for his administrative grievances. (Defendants' Objections to the Report ("Def. Obj.") 3.)  Second, Defendants object to Judge Pitman's recommendation that summary judgment be denied with respect to Plaintiff's equal protection claims.  (Id. 10.)  Specifically, Defendants argue that Plaintiff's equal protection claims with respect to the improper placement of an inmate in Plaintiff's cell and the temporary seizure of Plaintiff's eyeglasses should be dismissed because Plaintiff has not alleged that Defendants' conduct was irrational or wholly arbitrary.  (Id. 10.)  In addition, Defendants argue that Plaintiff's equal protection claims with respect to the temporary seizure of his eyeglasses and his work conditions should be dismissed because these allegations do not rise to the level of constitutional violations.  Defendants' objections merit de novo review of the portions of the Report to which the objections apply.

### 1.     *Work Shift Change as Retaliation*

For the reasons discussed above, Plaintiff's claims of retaliation in violation of the First Amendment survive Defendants' motion for summary judgment.

### 2.     *Equal Protection Claims*

Defendants argue that Judge Pitman erred in recommending the denial of Defendants' summary judgment motion with respect to Plaintiff's equal protection claims alleging that 1) the placement of an alleged pedophile in his cell violated his equal protection rights; 2) Defendants required Plaintiff to work long hours under onerous conditions; and 3) Defendants' seizure of his eyeglasses constituted a violation of his Equal Protection rights.  Since, as

discussed above, Plaintiff failed to exhaust the grievance process as to his first two equal

protection claims and those claims are accordingly dismissed with prejudice, this Court need only

respond to Defendants' objection regarding the seizure of Plaintiff's eyeglasses before he was

placed in the Special Housing Unit ("SHU").

Defendants argue that the seizure of Plaintiff's eyeglasses did not rise to the level

of a constitutional violation, as Plaintiff has alleged no injury, physical or otherwise, to his

person or property, and that his claim is accordingly too "de minimis to state an equal protection

claim." (Defs' Obj. 14.) However, this argument is unpersuasive. Unlike claims of retaliation,

there is no de minimis qualification constraining a plaintiff's ability to sustain claims brought

under the Equal Protection Clause. To sustain an equal protection claim not alleging invidious

discrimination (commonly referred to as a "class of one" equal protection claim), as Plaintiff

alleges here, a plaintiff need only show that he was intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment. See

Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir.

2004). The injury to such a plaintiff is the denial of equal protection under the laws of the state.

Thus, it is irrelevant whether Plaintiff has asserted some injury to his person or property.

Here, Plaintiff's equal protection argument is, in essence, that he was intentionally

treated differently from others placed in the SHU when his eyeglasses were seized by prison

officials. Plaintiff alleges that the prison officials did not seize the eyeglasses of other inmates,

despite, as Defendants point out, an express prison policy to retain an inmate's property before he

enters the SHU in order to search it. (See Declaration of Andrew Hobson ¶ 4.) Judge Pitman

found that there were questions of fact as to whether Plaintiff was treated differently from other

inmates, and this Court agrees.

Of course, in order to sustain a "class of one" equal protection claim, Plaintiff

must also show that there was no rational basis for the treatment. Although Judge Pitman noted

this requirement in the Report (see Report 67-68), in concluding that Defendants' motion for

summary judgment regarding Plaintiff's eyeglasses equal protection claim should fail, he merely

noted that there was "evidence sufficient to create an issue of fact as to whether the seizure of

plaintiff's eyeglasses was different from the treatment received by other inmates" (id. 69),

without making a determination as to whether or not the difference had a rational basis.[8]

Defendants, in their objections to the Report, argue that there is evidence in the

record that proves that Defendants had a rational basis for taking Plaintiff's eyeglasses for several

days while he was placed in SHU, and that they have accordingly met their summary judgment

burden. Defendants argue that it was standard procedure for inmates' property to be seized

---

[8]     Judge Pitman did note in his Report that "[w]hether a rational basis existed for any
        alleged differences in treatment is ordinarily a question for the jury." (Report 68,
        citing to the Cobb case). However, the Cobb case dealt with an appeal following a
        jury trial, and the court there was rejecting defendants' arguments that they were
        entitled to qualified immunity as a matter of law by holding that "[u]nder the
        circumstances . . . this is a question for the jury." Cobb, 363 F.3d at 111.
        Since Cobb, the Second Circuit has clarified that it is possible for the "rational basis"
        prong of an Olech "class of one" equal protection claim to be decided on a summary
        judgment motion. In reversing a denial of summary judgment, the Second Circuit
        noted that:

> the evidence adduced on the summary judgment motion is more than sufficient
> to foreclose a claim based on Olech. It is clear and uncontradicted that the
> initiation of disciplinary charges against these plaintiffs was not arbitrary, or
> without basis in departmental policy. It was done to punish plaintiffs for
> refusing to assist in the investigation and to deter other officers from similarly
> refusing to assist in investigations. Because the defendants' conduct was
> rationally related to accomplishing the work of the DOC (which plaintiffs do
> not dispute), defendants' actions were not without rational basis.

Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005). See also Giordano v. City of
New York, 274 F.3d 740, 751 (2d Cir. 2001) (recognizing that to survive summary
judgment, "class of one" claimant must present evidence that any differential
treatment was intentional, irrational, and wholly arbitrary.)

before entering SHU, and that, even if some inmates did not have their property seized (as

Plaintiff claims), this does not make the seizure of Plaintiff's eyeglasses irrational or arbitrary.

Although it is Defendants who have moved for summary judgment, it is Plaintiff,

as the party asserting the "class of one claim," who bears the burden of proving that claim.  When

the party seeking summary judgment on a claim does not carry the ultimate burden of persuasion

on that claim, it is sufficient that the moving party draw attention to the non-moving party's

inability to prove each essential element of his case.  See generally Celotex Corp. v. Catrett, 477

U.S. 317 (1986) (holding that if defendant movant draws attention to absence of support for

essential element of plaintiff nonmovant's claim, summary judgment may be granted unless

plaintiff sets forth facts requiring trial).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

252 (1986) (holding that a scintilla of evidence is insufficient to satisfy claimant's burden; to

defeat summary judgment, party with burden of persuasion must set forth sufficient material to

support trial determination that burden of persuasion satisfied).

Although Defendants do come forward with evidence that this seizure was

consistent with a prison policy, and even argue that the glasses withheld were reading glasses,

used only for reading (see Declaration of Andrew Hobson ¶ 4), Plaintiff counters this by arguing

that it was not routine for prisoners' glasses to be seized, that his glasses were distance glasses

that he needed for his safety and that, when the Defendants seized them, he was "subjected to the

possibility of serious injury." (Pl. Opp. 12.)  He includes in his opposition papers a copy of a

prescription for his glasses (see Pl. Exh. 15), and while it is unclear to the Court whether this

prescription truly supports Plaintiff's claim that he required his glasses for his own safety, such

are precisely the questions of fact better left to a jury than decided on a motion for summary

judgment.   Therefore, the Court finds that it can not be said at this point in the proceeding that

no rational factfinder could find that Defendants' treatment of Plaintiff in seizing his eyeglasses prior to placing him in SHU was wholly irrational or arbitrary. Accordingly, the Court adopts Judge Pitman's recommendation that Defendants' motion for summary judgment regarding Plaintiff's eyeglass seizure equal protection claim be denied. Plaintiffs other equal protection claims are dismissed, for the reasons stated above.

Report and Recommendation Concerning Plaintiff's Motion for a Temporary Restraining Order

By notice of motion dated August 26, 2003 (docket entry 18), Plaintiff moves for a temporary restraining order directing the Defendants to "cease any retaliatory actions and to withdraw and/or lift any effects or sanctions of previous retaliatory actions." On March 21, 2005, Judge Pitman issued an Report and Recommendation (docket entry 48) recommending that this motion be denied as moot, as Plaintiff had since been released from confinement. The Court adopts this recommendation, and Plaintiff's motion for a temporary restraining order (docket entry 18) is accordingly denied as moot.

Plaintiff's Motion for a Contempt Order

By notice of motion dated November 20, 2003 (docket entry 21), Plaintiff moved for a contempt judgment against certain Defendants, and that the Court order damages for the contempt. On January 22, 2004, Judge Pitman acknowledged receipt of Plaintiff's motion for contempt and directed him to provide forthwith copies of an undocketed affirmation and an undocketed motion for default that the motion for contempt referenced. Plaintiff failed to do so. Accordingly, his motion for a contempt order (docket entry 21) is denied, as he has provided no support for his contention that Defendants are in contempt.

Plaintiff's Motion to Compel or for an Enlargement of Time

By notice of motion dated March 15, 2004 (docket entry 25), Plaintiff moved for an order compelling Defendants to either answer the discovery requests he made on February 11, 2004, or to restrict their motion for summary judgment to non-factual issues. He also moved for an enlargement of time in which to respond to Defendants' motion for summary judgment.

Regarding Plaintiff's request for an enlargement of time, Judge Pitman granted a similar request Plaintiff had made after this one nunc pro tunc by Order dated March 21, 2005 (docket entry 49). In that Order, Judge Pitman noted that Plaintiff's opposing papers would be fully considered in resolving defendant's motion. This Court also grants Plaintiff's request for an enlargement of time (docket entry 25) nunc pro tunc, and notes that it has fully considered Plaintiff's opposition papers, which were filed on August 2, 2004.

Regarding Plaintiff's motion to compel discovery, in light of this Court's adoption of Judge Pitman's determination that additional discovery was not required for the disposition of any claims other than the retaliation claims (see supra n.5) and this Court's determination that additional discovery was not required for Plaintiff to survive summary judgment on his exhausted retaliation claims, Plaintiff's motion to compel (docket entry 25) is denied as moot.

## CONCLUSION

For the foregoing reasons, the Court adopts in part and declines to adopt in part Judge Pitman's Report (Docket entry 55). Specifically, the Court declines to adopt Judge Pitman's determination that the Plaintiff's unexhausted claims under the PLRA are still viable. The Court also declines to adopt Judge Pitman's resolution of Plaintiff's retaliation claims (specifically, those which survive the PLRA analysis). The Court does, however, adopt Judge

Pitman's recommendations that all of Plaintiff's claims against the individual Defendants in their

official capacities be dismissed; that all of Plaintiff's claims against the BOP and the United

States be dismissed for lack of subject matter jurisdiction; that summary judgment be granted

dismissing Plaintiff's deliberate indifference claims, Plaintiff's Privacy Act claims, Plaintiff's due

process claims, Plaintiff's claims alleging that administrative grievances at Otisville were

inaccurately indexed; and that summary judgment be denied on the exhausted aspect of

Plaintiff's equal protection claims (specifically, that claim concerning withholding of eyewear)

and be granted in Defendants' favor with respect to Plaintiff's other equal protection claims.

Plaintiff's cross-motion for summary judgment is denied.

Accordingly, the remaining claims in the case are: Plaintiff's exhausted retaliation

claims (his claim that his reassignment from an evening work shift to a morning work shift was

retaliatory, his claim that his placement in SHU was retaliatory, his claim that the seizure of his

eyeglasses was retaliatory, and his claim that disciplinary proceedings were commenced against

him in a retaliatory fashion), and his equal protection claim regarding the seizure of his

eyeglasses before he was placed in SHU. The parties shall promptly meet with Judge Pitman for

settlement purposes and for scheduling of any remaining discovery or other pre-trial activity.

This Opinion terminates docket entries 18, 21, 25 and 26.

SO ORDERED.

Dated: New York, New York
       July 18, 2007

LAURA TAYLOR SWAIN
United States District Judge